Argued March 25, reargued July 8, reversed and remanded October 7, 1924.

## C. A. McCARGAR et al. v. R. WILEY.

(229 Pac. 665.)

**Sales—Conditional Seller Retains Title Until Price is Paid—Seller's Rights on Buyer's Default in Payment of Purchase Price Stated.**

1. Legal title to goods sold on condition that title shall not vest in vendee until payment of purchase price remains in vendor until payment, and on vendee's default vendor may treat sale as absolute and sue for consideration, or regard it as canceled, and recover possession of property.

**Replevin—Sales—Issue in Replevin is Present Right to Possession—Vendee in Default has no Defense to Vendor's Action in Replevin.**

2. Issue in replevin is present right to possession of property, and defaulting vendee, having no title, has no defense to vendor's action.

**Set-off and Counterclaim—Essentials of Valid "Counterclaim" Stated.**

3. To constitute valid "counterclaim" under Section 74, Or. L., facts stated must be sufficient to constitute cause of action, in

Replevin action as subject to set-off or counterclaim, note, Ann. Cas. 1913A, 105.

defendant's favor against plaintiff, arising out of contract or transaction set forth in complaint, or, if action is one arising on contract, any other cause of action, arising on contract, existing at commencement of action, and "counterclaim" merely connected with subject of action, is insufficient.

**Pleading—Trial—Objection to Counterclaim may be by Demurrer, Objection to Evidence, Motion to Strike, or for Directed Verdict, and is not Waived by Reply.**

4. While proper mode of presenting question whether facts stated are sufficient to constitute counterclaim is by demurrer, question may be raised by objection to introduction of testimony offered to sustain counterclaim, by motion for directed verdict, or, if matters alleged are sham, frivolous and irrelevant, by motion to strike; nor is objection waived or cured by reply.

**Sales—Vendor may Sue for Possession on Vendee's Refusal to Surrender Possession on Demand.**

5. Vendee's refusal to surrender possession of automobile on vendor's demand, after default in payment, and subsequent detention thereof, entitled vendor to sue in replevin to recover possession.

**Set-off and Counterclaim—Allegations of False Representations and Breach of Warranty not Valid Counterclaim in Replevin by Vendor.**

6. Allegations of false representations and breach of warranty, resulting in damages to purchaser of automobile, do not constitute counterclaim, under Section 74, subdivisions 1, or 2, Or. L., in replevin by vendor on ground of buyer's wrongful detention of automobile.

**Set-off and Counterclaim—Statute Permitting Counterclaim in Answer Liberally Construed to Effectuate Purpose.**

7. Section 74, Or. L., permitting defendant to set up counterclaim in answer, should be liberally construed to effectuate purpose to prevent circuity of action, multiplicity of suits, unnecessary delay and expense to litigants.

**Replevin—Any Defense Controverting Plaintiff's Right of Possession Allowable.**

8. In replevin, any defense controverting plaintiff's right of possession when suit was commenced is allowable.

**Replevin—Set-off and Counterclaim—Set-off not Equaling or Exceeding Debt Due Plaintiff not Available to Defeat Latter's Right to Possession.**

9. Where plaintiff's right of possession arises, not from absolute ownership, but from defendant's default in payment of debt under contract giving plaintiff right to possession, in such case, for purpose of subjecting property to payment of debt, no set-off is available to defeat such right, unless amount of set-off equals or exceeds debt due, and defendant cannot recover judgment for excess, unless facts pleaded as set-off constitute counterclaim, within Section 74, Or. L.

Trial—Verdict not Responsive to nor Disposing of All Material Matters in Issue Defective in Substance.

10. Verdict in replevin should be responsive to and dispose of all material matters put in issue by pleadings, and verdict failing in such respect is defective in substance.

Replevin—Verdict Silent as to Ownership, Right of Possession and Right to Take Property from Defendant Insufficient.

11. Under Sections 153, 198, Or. L., it is error to enter judgment in replevin on verdict, silent as to ownership and right of possession, and whether taking of property from defendant by sheriff and delivery to plaintiff was rightful or wrongful, though answer makes no demand for its return, plaintiffs being entitled to judgment for recovery of property, on finding in their favor, though not to judgment in alternative, or assessing value of property or for return thereof.

Replevin—Verdict or Judgment Disregarding Requirements of Statute not Authorized.

12. Verdict or judgment in disregard of requirements under Sections 153, 198, Or. L., is not authorized in replevin action.

Sales—Buyer cannot Recover Payments on Price by Way of Counterclaim in Buyer's Action of Replevin, Without Tender of Property.

13. Under Section 8230, Or. L., defaulting buyer refusing to deliver automobile, when demanded by sellers and demanding damages for breach of warranty and fraud, affirmed contract, and he could not by counterclaim in vendor's action of replevin, or otherwise, recover back, on theory of rescission, what he paid on purchase price, not tender of automobile.

From Multnomah: FRED W. WILSON, Judge.

In Banc.

This is an action in replevin which was instituted to recover the possession of an automobile. The complaint is in the usual form and contains all of the averments necessary to maintain the action. It alleges, among other things, that plaintiffs are the owners and entitled to the immediate possession of the automobile, and particularly describes it; that it is of the value of $550 and in the possession of the defendant; that plaintiffs demanded possession of it and that the defendant wrongfully and unlawfully detains the same from plaintiffs in Multnomah County, Oregon. The judgment demanded was for the return of the automobile or for its value in case

a return thereof could not be had.  There was no allegation of or demand for damages.  In the preliminary proceedings the automobile was taken from defendant's possession and delivered to the plaintiffs.

The defendant filed an answer containing a general denial and also a counterclaim.  In his counterclaim he alleged that he purchased the automobile from the plaintiffs for the sum of $922, and paid thereon the sum of $100 in cash and delivered to plaintiffs a Ford automobile, for which it was stipulated he was to be allowed and credited the sum of $325, and gave his promissory note for the balance of $495; that the note, by its terms, was payable in monthly installments of $30 each, with interest, and that one installment only has been paid.  The others are due and in default.  It is alleged in the counterclaim that defendant was induced to purchase the automobile by plaintiffs' fraudulent misrepresentations, upon which he relied, and by plaintiffs' warranty that the automobile was in good condition and of high power; that the automobile was not in the condition represented or warranted and that, by reason of said false and fraudulent representations and breach of warranty, defendant sustained damages in the sum of $494.50, which sum he alleged had been paid out and expended by him upon the automobile, and in the further sum of $1,000, damages alleged to have been sustained by reason of his inability to use the automobile and the trouble and annoyance he had sustained because of its defective condition, for which sums the defendant demanded judgment.  The answer contained no claim or demand for the return of the automobile.  The plaintiffs filed no demurrer to the counterclaim, but interposed a motion to strike upon the ground that a counterclaim for the recovery

of damages does not lie in an action in replevin brought to recover the possession of a chattel. This motion was overruled. A reply was filed denying these allegations and upon the trial the same point was saved by a motion for a directed verdict, to the overruling of which an exception was reserved. The cause was tried to a jury and defendant had verdict, in the sum of $295.75, and judgment for said sum and for his costs and disbursements. The judgment made no mention of or reference to the automobile.

REVERSED AND REMANDED.

For appellants there was a brief over the name of *Messrs. Senn, Ekwall & Recken,* with an oral argument by *Mr. F. S. Senn.*

For respondent there was a brief over the name of *Messrs. Wilbur, Beckett & Howell,* with an oral argument by *Mr. F. C. Howell.*

RAND, J.—Although it was not alleged in any of the pleadings that the sale was a conditional one, it appeared from the evidence offered upon the trial by both plaintiffs and defendant, and it was admitted by both parties that the sale of the automobile was made under a written contract, which contract was introduced as an exhibit, and provides that the title to the automobile should not pass to the defendant until the whole purchase price was paid. It also appears from the allegations of the answer that, with one exception, the stipulated payments were not made at the times specified, nor made at all, and that by reason thereof the defendant was in default at the time plaintiffs demanded from defendant the possession of the automobile.

1. Where goods or chattels are sold on condition that the title thereto shall not vest in the vendee un-

til payment of the purchase price, the legal title to the property remains in the vendor until the payment is made, and if the vendee fails to make the payment at the specified time the vendor is entitled to the possession of the property. As said by this court in *Maxson* v. *Ashland Iron Works,* 85 Or. 345, 355 (166 Pac. 37), upon the default of the vendee in the payment of the purchase price under a contract of this character, the vendor "may upon a breach of the conditions treat the sale either as absolute and sue for the consideration agreed to be paid or he may regard the sale as canceled and recover the property." Where the vendors, as in this case, elected to recover the possession of the property, it was the duty of the vendee, upon demand, after default, to surrender the possession of the property to the vendors, and upon his refusal the plaintiffs, as vendors, were entitled to maintain an action to recover the possession of the property from the defendant vendee.

2. The issue to be litigated in an action in replevin is the present right to the possession of the property in controversy. Under this contract no title whatever to the automobile had vested in the defendant at the time when sued for the recovery thereof, and hence the defendant had no defense to this action: *Roach* v. *Curtis,* 191 N. Y. 387 (84 N. E. 283).

3. The defendant contends that the facts stated in the answer constitute a counterclaim within the meaning of the Code. These facts are that the defendant sustained damages by reason of false representations which induced him to purchase the automobile and the breach of a warranty as to the condition and quality of the automobile. So far as applicable to the question of whether these facts constitute a counterclaim within the meaning of the Code, Section 74, Or. L., provides as follows: "The

counterclaim * * must be one existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action," and "arising out of the contract or transaction set forth in the complaint as the foundation of plaintiff's claim," and "in an action arising on contract, any other cause of action arising also on contract and existing at the commencement of the action." In addition to these provisions the statutes of most states, defining what constitutes a counterclaim, included the provision "or connected with the subject of the action." These words, however, are omitted from our statute, and hence in this state a counterclaim, which is merely "connected with the subject of the action" and which might be permissible under other statutes, cannot be interposed as a counterclaim. Under our statute a counterclaim is not sufficient if it be only connected with the subject of the action: *Krausse* v. *Greenfield*, 61 Or. 502, 506 (123 Pac. 392); *Wait* v. *Wheeler & Wilson Co.*, 23 Or. 297, 301 (31 Pac. 661); *Loewenberg* v. *Rosenthal*, 18 Or. 178, 184 (22 Pac. 601); *Chance* v. *Carter*, 81 Or. 229, 234 (158 Pac. 947).

To constitute a valid counterclaim under our statute the facts stated in the counterclaim must be sufficient to constitute a cause of action in favor of the defendant and against the plaintiff, between whom a several judgment might be had in the action, and the cause of action set forth in the counterclaim must be one of the following: (1) A cause of action arising out of the contract set forth in the complaint as the foundation of the plaintiff's claim; (2) A cause of action arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, or (3) If plaintiff's action is one arising on contract, then any other cause of action arising also

on contract and existing at the commencement of the action.

4. While the proper mode of raising and presenting the question of whether the facts stated are sufficient to constitute a counterclaim under the statute is by demurrer (Pomeroy's Code Remedies (4 ed.), § 487), and while in the instant case the objection to the sufficiency of the counterclaim was not raised by demurrer, that is not the only manner in which the question can be presented to the court for decision. If the facts alleged do not constitute a counterclaim within the meaning of the statute and the matters alleged constitute no defense, the question of the sufficiency of the counterclaim may be raised by an objection to the introduction of any testimony offered to sustain it, as in *Chamberlain* v. *Townsend,* 72 Or. 207, 213 (142 Pac. 782), or by a motion for a directed verdict, and, if the matters alleged in the counterclaim are sham, frivolous and irrelevant, the objection may be raised by a motion to strike. The objection was raised here by a motion to strike and also by a motion for a directed verdict. The objection, therefore, if the matter alleged did not constitute a counterclaim or defense to the cause of action set forth in the complaint, was sufficiently raised and was not waived by failure to demur (see *Kondo* v. *Aylsworth,* 81 Or. 225, 158 Pac. 946), nor was it waived or cured by the reply: *Smith* v. *Hall,* 67 N. Y. 48.

5. As the defendant, until his default in payment, was rightfully in possession of the automobile, it was necessary for the plaintiffs to demand possession of it in order to render his subsequent possession unlawful. After demand and refusal by the defendant to surrender possession of it plaintiffs became entitled to maintain an action in replevin to recover the possession of the automobile. The cause of action

alleged in the complaint as the foundation of plaintiffs' claim was defendant's wrongful refusal, upon demand, to surrender the possession of the automobile to the plaintiffs and his subsequent wrongful detention of it. This refusal by defendant and his subsequent detention of the automobile was a clear violation of the legal right of the plaintiffs to the possession of the automobile, and gave to the plaintiffs the clear right to bring an action to recover the possession of it.

6. Assuming that the facts alleged in defendant's counterclaim are sufficient to constitute a cause of action in favor of the defendant and against the plaintiff and that if sustained by proof these allegations would entitle the defendant to recover therefor, the question is, is he entitled to plead these matters, either as a defense or as a counterclaim to the cause of action alleged in the complaint, or must he seek his remedy by an independent action? It must be obvious that the cause of action for the wrong complained of by the plaintiffs, namely, defendant's wrongful detention of their automobile, is not one arising on contract, but is based on tort, and therefore the defendant is not entitled to allege as a counterclaim in an action brought to recover the possession of the automobile a cause of action arising on contract under either subdivisions 1 or 2 of Section 74. Hence, if entitled to set forth these matters as a counterclaim it can only be for the reason that the cause of action set forth in the counterclaim is one arising out of the transaction set forth in the complaint as the foundation of plaintiffs' claim. The transaction set forth in the complaint as the foundation of plaintiffs' claim is the wrong committed by the defendant in the detention, without legal right, justification or excuse, of plaintiffs' automobile. The

transaction set forth in the counterclaim is the alleged wrong committed by the plaintiffs in making false representations and in the breach of a warranty, resulting in damages to the defendant. Between the transaction set forth in the complaint and the transaction set forth in the counterclaim there is no legal connection whatsoever. They are entirely separate and distinct from each other and the wrongs complained of in the counterclaim do not arise from the transaction alleged in the complaint. They preceded the transaction alleged in the complaint and are wholly unrelated to it, and hence the matters alleged in the counterclaim do not constitute a counterclaim within the meaning of the Code.

The matters alleged in the counterclaim are not sufficient to constitute any lien or charge against the automobile or any special interest or property in it or right to the possession of it. Plaintiffs' right to the present possession of the automobile arises from their absolute ownership of it, while defendant's right to recover damages depends upon and grows out of fraud and breach of contract. Defendant's right to recover for the fraud and breach of contract in no way affects plaintiffs' ownership or right to the possession of the automobile, and if defendant's counterclaim should be sustained it could not defeat or impair plaintiffs' right to the possession of the automobile. It is therefore clear that the matters alleged in the counterclaim do not constitute any defense to plaintiffs' right to recover the automobile.

7. The purpose of the statute permitting a defendant, in his answer, to set up a counterclaim was to prevent circuity of action, multiplicity of suits, unnecessary delay and expense to litigants. To effectuate that purpose the statute should be liberally construed but it should not be construed so as to include

a counterclaim which does not fairly come within its terms: *Wait* v. *Wheeler & Wilson Co., supra.* As it is clear that the counterclaim alleged in the answer does not come within the terms of the statute, it follows that the matters alleged do not constitute a counterclaim within the meaning of the statute.

8. In a replevin action any defense which controverts plaintiff's right of possession at the time the suit was commenced is allowable: Cobbey on Replevin (2 ed.), § 783. A judgment for the damages alleged in defendant's answer, whether recovered in this action or in a separate action brought by the defendant against the plaintiffs, would have no more effect upon plaintiffs' right to the possession of the automobile at the time this action was commenced than would the recovery against the plaintiffs of a judgment by a third person on any other claim or demand. Upon establishing their cause of action the plaintiffs were clearly entitled to a judgment for the possession of the automobile and for the costs of the action. Their right to costs could be defeated only by their failure to sustain the allegations of the complaint. These allegations were established and no defense was offered except the matters alleged in the counterclaim upon which the defendant secured a money judgment and a judgment for the costs of the action. This result illustrates the vice of upholding a counterclaim in clear contravention of the provisions of the statute.

If, instead of having commenced this action to recover the possession of the automobile, the plaintiffs had commenced an action to recover the balance of the unpaid purchase price, then, as plaintiffs' cause of action would have been one arising on contract, so far as the alleged breach of warranty is con-

112 Or.—15

cerned, the defendant, under Section 74, Or. L., would have been entitled to plead as a counterclaim the matters alleged in his answer as those matters arose, if not out of the contract or transaction set forth in the complaint, at least out of some other contract. In such an action the allowance in favor of the defendant of any sum for damages would either entirely defeat plaintiffs' right to recover or else reduce the amount which plaintiffs would be entitled to recover.

In *Gary Coast Agency, Inc.,* v. *Lawrey,* 101 Or. 623 (201 Pac. 214), which was an action to collect a note given in part payment of the purchase price of a truck sold under a conditional sales contract, this court properly affirmed a judgment in favor of the defendant upon a counterclaim for damages arising from a breach of warranty and fraud in the sale of the truck, and held that because of plaintiff's failure to demur to the counterclaim, which combined a claim for damages for tort with a claim for damages for breach of contract, the error of not separately stating a cause of action arising on tort and one arising on contract was waived. In that case the counterclaim, if sustained in whole or in part, would have operated either to entirely defeat or to reduce the amount of plaintiff's recovery, while in this case no such result could follow.

Defendant relies upon the decision of this court in *Zimmerman* v. *Sunset Lumber Co.,* 57 Or. 309 (111 Pac. 690, Ann. Cas. 1913A, 103, 32 L. R. A. (N. S.) 123), which was an action to recover possession of two engines that had been sold by the plaintiff to the defendant under a contract which provided that the title to the engines should not vest in the defendant until the purchase price had been paid, as in the instant case the plaintiffs alleged ownership and right

of possession, but unlike the instant case the complaint set forth the provisions of the contract under which the sale had been had. The defendant answered alleging three counterclaims for damages, one arising from an overpayment of freight because of the negligent shipment of the engines by plaintiff to a wrong destination, one arising from the loss of the use of the engines through plaintiff's delay in shipping them to defendant, and the third for damages resulting in the defective construction of one of the engines, for the replacement of which the defendant was compelled to pay. A demurrer to these counterclaims was sustained in the lower court. This ruling of the lower court was upheld upon appeal upon the ground that the aggregate of the damages alleged did not equal or exceed the balance of the unpaid purchase price which the defendant admitted was then due upon the engines. In that case this court, speaking through Mr. Justice EAKIN, said: "The defendant is entitled to allege and prove any facts that will defeat plaintiff's right to possession, such as payment of the debt or a counterclaim equal to it, provided it is such as may be pleaded under Section 74, B. & C. Comp.; but any set-off less than the whole amount due will be unavailing for that purpose, as plaintiff is entitled to possession if any part of the price is unpaid." Again the court said: "If the action is to recover possession of property, the right to which arises upon contract, such as, upon chattel mortgage, which in terms authorizes the mortgagee to take possession upon default in payment of the debt secured, any matter tending to defeat plaintiff's right of possession may be pleaded as a setoff, as plaintiff's right, in such a case, being for the purpose of foreclosure, is not based on title, but right of posses-

sion; and if there is no debt there is no right of possession in the mortgagee."

9. From that decision the following rule may be deduced. In an action of replevin where plaintiff's right to the possession of the property arises, not from absolute ownership in the plaintiff, as in the instant case, but from defendant's default in the payment of a debt under a contract which gives to the plaintiff, if the debt is not paid, the right to the possession of the property for the purpose of subjecting it to the payment of the debt, no set-off is available to defeat plaintiff's right to possession unless the amount of the set-off equals or exceeds the debt due, and if in such case the set-off pleaded exceeds the debt due, nevertheless the defendant cannot recover judgment for the excess unless, if such a thing be possible, the particular facts pleaded as a set-off constitute a counterclaim which comes fairly within the terms of the statute: Section 74, Or. L.

Defendant cites numerous other cases holding to the effect that when an action is brought by a mortgagee of a chattel mortgage to recover possession of the mortgaged chattels for the purpose of foreclosure, the mortgagor may defeat the action by showing that the mortgage debt has been paid. Upon the default of a mortgagor in a chattel mortgage to pay the mortgage debt the mortgagee is entitled to the possession of the mortgaged chattels in order to enable him to foreclose his mortgage: *J. C. Corbin Co.* v. *Preston,* 109 Or. 230, 252 (212 Pac. 541, 218 Pac. 917). In such case the mortgagee would have a special interest in the mortgaged property sufficient to entitle him to recover the possession of the mortgaged property by an action in replevin. Where an action is brought by a mortgagee for that purpose the defendant may, of course, defeat the action by alleging and

proving that the mortgage debt has been paid. If the debt has been paid all rights of the mortgagee under the mortgage are terminated. The payment of the mortgage debt extinguished the debt and thereafter in legal effect the mortgage was a mere nullity and no rights could subsist in the mortgagee under said mortgage. Where an action is brought by the mortgagee to recover the possession of mortgaged chattels in order to enable him to foreclose the mortgage and the answer alleges that the mortgage has been paid in full, the plea of payment is in bar of plaintiff's right to maintain the action. This, if sustained, would be a complete defense to the action, but such a plea possesses none of the elements of a counterclaim. Evidence in support of the plea would be admissible, not for the purpose of establishing the counterclaim but for the purpose of defeating plaintiff's demand for the possession of the property. In order to defeat the demand of a mortgagee for the possession of the mortgaged property it is necessary to allege and prove that the mortgage debt has all been paid, for if any part thereof is unpaid the mortgagee would be entitled to recover the possession of the property so as to subject it to the payment of the debt for which it had been given as security. These authorities cited by defendant and the principles they announce have no application to the facts involved here.

If, as stated, the plaintiffs in the instant case had treated the sale as absolute and sued for the consideration agreed to be paid for the automobile, defendant's counterclaim would have been permissible, but instead of doing that plaintiffs in this case treated the sale as canceled and sued to recover the possession of the property. As against their clear legal right to recover the possession of the property, the

defendant, not for the purpose of defeating the recovery, but for the purpose of obtaining a judgment against the plaintiffs, sought to recover upon an alleged counterclaim. "It would seem," says Mr. Pomeroy, "that in an action to recover the possession of specific chattels, no counterclaim is possible, unless, perhaps, equitable relief may be awarded under some very exceptional circumstances." Pomeroy's Code Remedies (4 ed.), § 643.

The author of Wells on Replevin, Section 630, says: "The nature of actions for tort does not allow an examination into counterclaims of indebtedness or damages. This is especially the case in replevin. The plaintiffs sued for specific articles, and damages for their wrongful detention, and it is contrary to the spirit of the law to allow an offset to be investigated in cases of a suit for the recovery of chattels wrongfully withheld." In the two sections following the author points out certain exceptions to the general rule, such as when property has been distrained for rent the right of the tenant, in an action to recover the property distrained, to offset, as against the rent, damages arising from the landlord's breach of a covenant in his lease to an amount equal to the claim for rent and thereby defeat the distress; or the right of a carrier, when sued in trover for goods lost, to recoup upon its lien for freight; or, when the defendant justified the detention of the property sought to be recovered in a replevin action upon the ground that he had a lien upon the property, the right of the plaintiff to show that the lien had been discharged or extinguished by the payment of money or by damages to the property while in defendant's possession and caused by the negligence of the defendant.

However, the facts alleged do not bring this case within any of the exceptions to the general rule. In

the case at bar plaintiffs, under the admitted facts, were entitled to a judgment for the possession of the automobile and for the costs of the action. Under the procedure adopted by the lower court the case proceeded upon the theory that the counterclaim was the only matter in issue. A recovery by the defendant upon his alleged counterclaim could not have the effect of defeating plaintiffs' right to a judgment for the possession of the automobile, and if the procedure adopted in this case could be upheld, it would follow that both the plaintiffs and the defendant would be entitled to obtain a separate judgment in their favor in one and the same action. For such procedure no support can be found in the statute.

By the complaint the plaintiffs claim to be the owners of the automobile in controversy, as well as to be entitled to its possession. The verdict is silent, both as to the ownership of the property and as to the right of possession, and both of those issues remain undetermined. The issue to be litigated in an action of replevin is the present right to the possession of the property in controversy: *Roach* v. *Curtis*, 191 N. Y. 387 (84 N. E. 283). As said by this court: "In an action for the recovery of specific personal property the question in issue is the right of possession, and, if the effect of the verdict is to change the possession from one party to the other, the jury must find the value of the property as a basis for an alternative judgment, in case delivery of the possession of such property cannot be had." *Nunn* v. *Bird*, 36 Or. 515, 522 (59 Pac. 808).

10, 11. By the denials in the answer the defendant put in issue both plaintiffs' ownership and right to the possession of the automobile in controversy. "In replevin," as said by Mr. Justice LORD in *Kee* v. *Dunbar*, 20 Or. 416, 418 (26 Pac. 275), "the rule is that

the verdict should be responsive to and dispose of all the material matters put in issue by the pleadings. A verdict that fails in this respect does not respond to the issues raised and is defective in substance." In the instant case the verdict settles none of these issues and leaves them wholly undetermined. No reference to the automobile or to the possessory right thereof is to be found, either in the verdict or the judgment. In the preliminary proceedings the automobile was delivered to the plaintiffs, but there is no allegation of this fact in the pleadings. Whether the taking of the automobile from defendant by the sheriff and its delivery to the plaintiffs was rightful or wrongful is not settled either by the verdict or the judgment. It is true that the answer makes no demand for its return and it is possible that defendant's failure to demand a return amounts to an estoppel of his right to later insist upon the possession of the automobile, but this estoppel, if any, arises from the conduct of the parties and not from any issue raised by the pleadings or anything said in the judgment itself. As the automobile was delivered to plaintiffs during the progress of the action, the plaintiffs were not entitled to a judgment in the alternative or to have the value assessed or for the return of the property, but they were entitled, upon a finding in their favor, to a judgment for the recovery of the automobile: See *Prescott* v. *Heilner,* 13 Or. 200 (9 Pac. 403); *Phipps* v. *Taylor,* 15 Or. 484 (16 Pac. 171). The verdict does not conform to the statute and the judgment given in the action does not comply with the requirements of the statute prescribing the form of the judgment to be entered in a replevin action.

The statute, Section 153, Or. L., prescribes that "In an action for the recovery of specific personal

property, if the property have not been delivered to the plaintiff, or the defendant by his answer claim a return thereof, the jury shall assess the value of the property, if their verdict be in favor of the plaintiff, or if they find in favor of the defendant, and that he is entitled to a return thereof, and may at the same time assess the damages, if any are claimed in the complaint or answer, which the prevailing party has sustained by reason of the detention or taking and withholding such property." Section 198, Or. L., provides: "In an action to recover the possession of personal property, judgment for the plaintiff may be for the possession, or the value thereof, in case a delivery cannot be had, and damages for the detention thereof. If the property have been delivered to the plaintiff, and the defendant claim a return thereof, judgment for the defendant may be for a return of the property, or the value thereof, in case a return cannot be had, and damages for taking and withholding the same."

12. Under these provisions of the statute an action to recover the possession of personal property, although possessing the elements of the common-law action in replevin, is no longer a common-law action but is statutory, and parties to the action must conform to the requirements of the statute. By these two sections the statute prescribes the requirements of the verdict and judgment in an action for the recovery of personal property. A verdict or judgment in entire disregard of these requirements is not authorized in a replevin action. As neither the verdict nor the judgment conformed to any of the requirements of the statute it was error for the court to receive the verdict or to enter judgment thereon.

A question in some respects similar to that presented here arose in the case of *Maxson* v. *Ashland*

*Iron Works, supra.* In that case the plaintiff had sued the Ashland Iron Works to recover possession of certain mill machinery. The answer alleged that the property in controversy had been mortgaged to the defendant by one Johnson while in possession of it, and that defendant had become the owner of it through foreclosure and sale. Upon the trial the evidence showed that the plaintiff had entered into a contract with Johnson, by the terms of which the plaintiff was to retain the possession of the property until the full purchase price was paid; that Johnson had paid thereon the sum of $300, leaving but $200 due to plaintiff under the contract. Plaintiff had judgment adjudging him to be the owner of the property and entitled to the immediate possession thereof and that its value was the sum of $500. Subsequent to the entry of the judgment the lower court entered an order to the effect that unless plaintiff would remit from the judgment $300 of the value the judgment would be set aside and a new trial granted. This order not being complied with the judgment was set aside. Upon appeal it was held that the word "possession" had been inadvertently used for the term "title." In reversing the case this court quoted with approval the headnote in *Thirlby* v. *Rainbow*, 93 Mich. 164 (53 N. W. 159), which reads as follows: "The question of the right of a vendee of personal property, the title to which was retained in the vendor until the payment of the purchase price, with the right to reduce it to possession in case of nonpayment, to recover the amount paid thereon in excess of what the vendor had a right to retain, cannot be tried in a replevin suit brought by the vendor after default in payment and refusal to surrender the property on demand." This court then said: "To the same purport is the case of *Ryan* v. *Wayson*, 108

Mich. 519 (66 N. W. 370), where it was held that upon the failure of a vendee to comply with the terms of a conditional sale the vendor was entitled to the possession of the property, although there was no express provision to that effect, and that in an action of replevin by the vendor under such a contract a judgment in favor of the vendee for the excess of the value of the goods over the unpaid purchase price was unauthorized, since the vendee had no special interest in the goods, even if entitled to treat the contract as rescinded, but at most he had only a personal claim against the vendor.''

13. In an action to recover the purchase price of property sold, breach of warranty or fraud is a valid counterclaim. Hence, if this action had been brought to recover the purchase price of this automobile and not to recover possession of it, the facts alleged would have constituted a valid counterclaim to the cause of action thus sued on, for if found to be true in an action to recover the purchase price, the damages recovered on the counterclaim would either defeat a recovery by plaintiffs or else reduce the amount of the recovery, and if the damages arising from the fraud were found to be in excess of the amount due to the plaintiffs, it would entitle the defendant to a judgment over in his favor for such amount.

In this action, which was brought to recover the possession of the automobile in controversy and not the balance of the purchase price, a counterclaim to recover damages for breach of contract or for fraud growing out of the sale of the automobile by plaintiffs to defendant will not lie for the reasons above stated, and also because the law affords no such remedy to the defendant.

''If one is induced by fraud to enter into a contract for the purchase of an article, on discovery of the

fraud there are two methods of procedure open to him: (1) he may promptly return the property on such discovery, rescind the contract and sue for what he has paid; or (2) he may keep the property and recoup for the damages he has sustained, when sued for the purchase price: *Scott* v. *Walton,* 32 Or. 460 (52 Pac. 180)." *Gary Coast Agency, Inc.,* v. *Lawrey, supra.* In such case the defrauded party, upon discovery of the fraud, has an election of remedies. "He may either affirm the contract and sue for damages or disaffirm it and be reinstated in the position in which he was before it was consummated. These remedies, however, are not concurrent but wholly inconsistent. The adoption of one is the exclusion of the other." *Scott* v. *Walton, supra.*

The statute (§ 8230, Or. L.) provides:

"Where there is a breach of warranty by the seller, the buyer may, at his election: (a) Accept or keep the goods and set up against the seller the breach of warranty by way of recoupment in diminution or extinction of the price; (b) Accept or keep the goods and maintain an action against the seller for damages for the breach of warranty; (c) Refuse to accept the goods, if the property therein has not passed, and maintain an action against the seller for damages for the breach of warranty; (d) Rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received, return them or offer to return them to the seller and recover the price or any part thereof which has been paid. * * (3) Where the goods have been delivered to the buyer, he cannot rescind the sale, * * if he fails to return or offer to return the goods to the seller, * * (4) Where the buyer is entitled to rescind the sale and elects to do so, * * If the price or any part thereof has already been paid the seller shall be liable to repay so much thereof as has been paid, concurrently with the return of the goods, or imme-

diately after an offer to return the goods in exchange for re-payment of the price."

Where the buyer proceeds under the subheads (a), (b) or (c) he affirms the contract. The remedy to which he will become entitled for a breach of warranty depends upon his choice of the remedies provided by the statute. These remedies are not cumulative. For a breach of warranty he can have any one of them, but he cannot, under the statute, have more than one remedy upon any one contract for the same breach. Before the buyer can rescind the contract and recover back the money he has paid, the statute requires that he shall return or offer to return the goods he has received.

In the instant case the defendant failed to return the automobile or to offer to return it to the plaintiffs. On the contrary he refused to deliver the automobile to plaintiffs when demanded. His failure to return the automobile and his refusal to deliver it upon demand, while a violation of the contract, was an affirmance, upon his part, of the contract, for he could have no right to the automobile unless it arose under the contract. In his counterclaim he demands damages for breach of warranty and for fraud. Both by demanding damages for breach of warranty and by demanding damages for fraud he affirmed the contract. Under the statute, upon affirming the contract he is given his choice of three remedies. If sued by the seller for the balance due under the contract "he may set up against the seller the breach of warranty by way of recoupment in diminution or extinction of the price." This, it will be noted, is not by way of an independent suit but is by way of answer, and contemplates that the buyer shall both keep the property and be sued for the purchase price, for it is only where he accepts or

keeps the goods that this remedy becomes available, and it is only when he is sued for the price that he can so recoup. If, instead of relying upon breach of warranty, he relies upon fraud, "he may keep the property and recoup for the damages he has sustained when sued for the purchase price." *Gary Coast Agency, Inc.,* v. *Lawrey, supra.* Hence, the remedy provided by statute to the buyer for breach of warranty and the remedy recognized by the law for fraud are, in two respects, identical. In each case the buyer keeps the property and in each case he is sued for the purchase price. The only difference between the two is that when the buyer sets up the breach of warranty when sued for the purchase price he cannot recover an independent judgment against the plaintiff. He can only set up the damages in diminution or extinction of the price, while, when the buyer sets up fraud he may recover an independent judgment if the damages exceed the balance due on the purchase price. But in neither case can the defendant set up a counterclaim unless he is sued for the purchase price. The other two remedies provided by statute, where there is a breach of warranty by the seller and the buyer affirms the contract, are: the buyer may accept or keep the goods and maintain an action against the seller for damages for the breach of warranty or he may refuse to accept the goods if the property therein has not passed and maintain an action against the seller for damages for the breach of warranty. In pursuing either of these two remedies the buyer commences an independent action against the seller to recover these damages, and in neither case can they be set up under the statute as a counterclaim. Although the amount paid upon the purchase price may become an element in some cases, which should be considered by the jury in determin-

ing the amount of the damages to which the buyer is entitled, the buyer is not permitted, under any of these remedies, to recover back what he has paid upon the purchase price.

In this case the defendant, by his counterclaim, seeks to rescind the contract and recover back what he has paid to the plaintiffs on the purchase price without returning or offering to return the automobile. This he cannot do under the statute. To recover back what he has paid he must rescind the contract and return the property which he has received. The same rule applies if the defendant seeks to rescind the contract for fraud. "He may promptly return the property on such discovery, rescind the contract and sue for what he has paid." *Gary Coast Agency, Inc., v. Lawrey, supra.* Hence, this counterclaim cannot be sustained under either aspect of the act, whether based upon fraud or based upon breach of warranty, for in neither event can the counterclaim be sustained unless the buyer is sued for the purchase price.

For these reasons the judgment of the lower court must be reversed.    REVERSED.

BURNETT and BROWN, JJ., concur. COSHOW, J., concurs in the result.

McBRIDE, C. J., and BEAN, J., dissent.

BURNETT, J., Specially Concurring.—In this action for the recovery of the possession of personal property, the only thing to be determined is the right to the possession of the property, or, in case delivery thereof cannot be had, for its value together with damages for its detention.

The form of verdict in such an action is prescribed in Section 153, Or. L.:

"In an action for the recovery of specific personal property, if the property have not been delivered to the plaintiff, or the defendant by his answer claim a return thereof, the jury shall assess the value of the property, if their verdict be in favor of the plaintiff, or if they find in favor of the defendant, and that he is entitled to a return thereof, and may at the same time assess the damages, if any are claimed in the complaint or answer, which the prevailing party has sustained by reason of the detention or taking and withholding such property."

The only damages contemplated by this section is for the detention or taking of the property. It does not allude to damages for fraud in the transaction by which the property was acquired or disposed of, but relates only to the damages growing out of the violation of the custody of the property.

The form of judgment in such an action is prescribed in Section 198, Or. L.:

"In an action to recover the possession of personal property, judgment for the plaintiff may be for the possession, or the value thereof. If the property have been delivered to the plaintiff, and the defendant claim a return thereof, judgment for the defendant may be for a return of the property, or the value thereof, in case a return cannot be had, and damages for taking and withholding the same."

With these requirements of the Code as to the kind of judgment to be rendered in such an action let us recur to the nature of counterclaim defined in Section 74, Or. L.:

"The counterclaim mentioned in section 73 must be one existing in favor of a defendant, and against a plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes of action:

"(1) A cause of action arising out of the contract or transaction set forth in the complaint, as the foundation of the plaintiff's claim.

" (2) In an action arising on contract, any other cause of action arising also on contract, and existing at the commencement of the action."

For the purposes of this case, the second subdivision relating to an action on a contract may be laid aside. The only pretense for counterclaim is in the first subdivision for a cause of action arising out of the contract or transaction set forth in the complaint. But in Section 74, not only must the element described in Section 73 be new matter constituting a defense or counterclaim, but a case must also be presented where a separate judgment may be had in this particular action.

Based upon Section 153 as to the form of the verdict and upon Section 198 as to the form of the judgment the defendant urging a counterclaim must show such a case as will entitle him to the statutory judgment prescribed in an action for recovery of personal property. That is, he must show under Section 198 that he is entitled to a return of the property after it has been delivered to the plaintiff or otherwise, that he is entitled to the possession of the property. If he does not show the right to a judgment which can be rendered in that action, he does not show a counterclaim. He cannot litigate anything the disposal of which does not decide the right to the possession of the property. It is only when sued for the price that he can set up a counterclaim for damages arising from the fraud which he alleges.

Governed as this action is by special provisions of the Code, I concur with Mr. Justice RAND.

BEAN, J., Dissenting.—This is an action for the possession of an automobile. The complaint is in the usual form. The defendant denied the allegations of the complaint and alleged that the plaintiffs sold

112 Or.—16

the defendant the automobile in March, 1921, at an agreed price of $920, and in substance avers that the plaintiffs, as an inducement for the defendant to buy the automobile, warranted the car as a high motor Moore; that it was mechanically perfect and in first-class condition and in all respects that the power of the engine and the hill-climbing qualities were equal to the other low motor car used in the demonstration; that the car sold to defendant would develop from 25 to 27 miles to the gallon of gasoline; that the defendant relied upon such warranties and was induced to purchase the car and paid thereon a Ford automobile at the agreed price of $325, $100 in cash, and gave his promissory note for the balance in the sum of $495, to be paid at the rate of $30 per month and interest.

Defendant then avers that the automobile purchased was not as represented and warranted by the plaintiffs, but that the engine of the high-power Moore had little power, or hill-climbing qualities, and the same was not in first-class condition or mechanically perfect in that the clutch would not hold, "and would throw oil from a point in the shaft near the fan belt to such an extent that the hood of the said automobile would become covered with oil and the clothes of persons riding in said automobile would become sprinkled and saturated with oil thrown from said point" and the said automobile would develop only 14 to 18 miles to a gallon of gasoline.

Defendant paid one installment of $30 and interest, secured a license, paid insurance on the car; and after he had discovered the defects, he complained to plaintiffs, who admitted that the car was not in the condition in which it was warranted to be and promised to repair and put the same in condition; that after the car had been in the shop four times, plaintiffs

failed and refused to remedy the defects and defendant notified plaintiffs that he would not make further payments unless the car was put in the condition it was warranted. It is further averred by defendant that about that time, in order to settle the difference between plaintiffs and defendant, plaintiffs agreed to deliver a certain Dodge automobile to defendant, in consideration of the sums paid upon the Moore automobile, and surrender his note given for the balance of the purchase price; that defendant accepted the proposition but when he offered to make the exchange the plaintiffs failed and refused to carry out the agreement.

Defendant demands $494.50 with interest and $1,000 damages. The plaintiffs moved to strike out defendant's further and separate answer and counterclaim for the reason that plaintiffs' action was one of replevin, not subject to counterclaim. This motion was overruled by Hon. George W. Stapleton, circuit judge, after much research and study, whereupon plaintiffs filed a reply putting in issue the new matter of the answer.

Upon a trial before a jury, verdict was rendered in favor of defendant for the sum of $295. From a judgment thereon plaintiffs appeal.

It appears that the note given or the contract of sale of the automobile provided for the retention of title in the plaintiffs until the balance of the purchase price was paid. The plaintiffs contend that there was parol evidence admitted to vary the terms of the written contract. The written agreement, which is in evidence and marked Plaintiffs' Exhibit "A," has the following provisions:

"No representations or agreements other than as set forth herein have been made by or on behalf of the vendor as an inducement to the execution hereof

by the vendee or otherwise; and there are no other understandings or agreements between the vendor and vendee in reference to the above property, or this note or contract."

Plaintiffs also contend that the replevin action determines the right of possession of the car and nothing more; that damages as a counterclaim cannot be pleaded or awarded to the defendant.

In the earlier cases the set-off was not allowed in an action of replevin except where equitable relief may be demanded under exceptional circumstances. In some jurisdictions the filing of a counterclaim in a replevin suit is expressly prohibited by statute. Since the adoption of Codes, in most of the states, the doctrine of set-off and counterclaim has undergone much change. At first, counterclaims were held not to be available in any action for tort, and therefore not in replevin, which sounds in tort: 34 Cyc. 1416, subd. 4. In many of the jurisdictions which have adopted a Code of Civil Procedure, it is provided with respect to set-off and counterclaim in general that the answer may contain a statement of any new matter constituting a counterclaim, which is defined to be a cause of action arising out of the contract or transaction set forth in the complaint as the foundation of plaintiff's claim, or connected with the subject of the action. This language is held sufficiently comprehensive to permit the setting up in an action of replevin, of a counterclaim coming within the terms of the definition: Note to *Zimmerman* v. *Sunset Lbr. Co.*, Ann. Cas. 1913A, 107; *Ames Iron Works* v. *Rea*, 56 Ark. 450 (19 S. W. 1063); *Rennebaum* v. *Atkinson*, 103 Ky. 555 (45 S. W. 874); *Dodd* v. *Wilson*, 26 Mo. App. 462; *McCormick Mach. Co.* v. *Hill*, 104 Mo. App. 544 (79 S. W. 745); *Thompson* v. *Kessel*, 30 N. Y. 383; *Adenaw* v. *Piffard*, 137 App. Div. (N. Y.) 470

(121 N. Y. Supp. 825); *Vallancey* v. *Hunt,* 20 N. D.
579 (129 N. W. 455, 34 L. R. A. (N. S.) 473); *Morgan*
v. *Spangler,* 20 Ohio St. 38.

The State of Oregon seems to be aligned with other
Code states allowing a counterclaim to be pleaded by
defendant in an action for the possession of personal
property in the nature of replevin, in cases in which
the claim is a direct result of a breach of the contract
by the plaintiff, is reasonably within contemplation
of the parties and arises ''out of the contract or
transaction set forth in plaintiff's complaint as the
foundation of the plaintiff's claim'' and is sufficient
to defeat the plaintiff's right to recovery provided it
equals or exceeds the amount of the plaintiff's claim:
Sec. 74, subd. (1), Or. L.; *Zimmerman* v. *Sunset Lbr.
Co.,* 57 Or. 309, at page 313 (111 Pac. 690, 691, Ann.
Cas. 1913A, 103, 32 L. R. A. (N. S.) 123), where Mr.
Justice EAKIN states thus:

''But, if the action is to recover possession of property, the right to which arises upon contract, such as,
upon chattel mortgage, which in terms authorizes
the mortgagee to take possession upon default in payment of the debt secured, any matter tending to
defeat plaintiff's right of possession may be pleaded
as a set-off, as plaintiff's right, in such a case, being
for the purpose of foreclosure, is not based on title,
but the right of possession; and if there is no debt
there is no right of possession in the mortgagee.
This is recognized in *Nunn* v. *Bird,* 36 Or. 515 (59
Pac. 808), and *Freeman* v. *Trummer,* 50 Or. 287 (91
Pac. 1077). But to defeat the action the set-off must
equal the debt. Cobbey, Replevin, § 791; Wells, Replevin, § 581.

''Most of the cases discussing this question grow
out of chattel mortgage or some other character of
lien, and it seems that the same rule applies to cases
in which the vendor retains the title until full payment of the purchase price, as in the case before us.
In such a case, if the debt is canceled, his title is

terminated without other act. This is recognized in *Ames Iron Works* v. *Rea,* 56 Ark. 450 (19 S. W. 1063), and Cobbey, Replevin, § 791.''

In *McCormick Harv. Mach. Co.* v. *Hill, supra* (see note, Ann. Cas. 1913A, 108), the court, after an extended review of the authorities, and in view of the liberal construction put on the state statutes in reference to set-off and counterclaim with a view to settling all controversies in one action, laid down the rule that set-off and counterclaim are available as defenses in replevin as well as in other actions, subject, of course, to such restrictions as the nature of the proceeding or the facts of the case may impose. The court said:

''Does the asserted counterclaim arise out of the contract or transaction set forth in the petition as the foundation of the plaintiff's claim or is it connected with the subject of the action? It must fulfill one of those contingencies, as this is not a case on a contract. * * The overpayment pleaded by way of counterclaim is directly connected with the subject of the action, when thus regarded, and might perhaps be declared to arise out of the transaction on which the notes and mortgage were given. But we prefer to decide that the payments are connected with the subject of the action. The phrase 'subject of the action' is different from 'cause of action,' and signifies the ultimate or primary title, right or interest which a plaintiff seeks to enforce or protect; not merely the wrong to be redressed in the particular case. According to this view, the subject of the action in this litigation is neither the animals mentioned in the complaint, nor their unlawful detention by the defendant, but plaintiff's claim against the defendant on the notes and chattel mortgage. Plaintiff's right to the stock depended entirely on whether its notes had been paid and the lien of the mortgage thereby destroyed; hence the indebtedness was the subject of the action, and its existence the fact in dispute.''

In the case of *Minneapolis Thresh. Mach. Co.* v. *Darnell,* 13 S. D. 279 (83 N. W. 266), an action of replevin, to enforce a chattel mortgage, the defense was that at the time of the execution of the mortgage the plaintiff stipulated that the defendant should insure the mortgaged property against loss by fire, and that the plaintiff undertook, on the delivery by the defendant to him of a promissory note for the premium, to secure the insurance or to carry the risk itself; that the plaintiff failed to procure insurance; and that the property had been damaged by fire to an extent which the defendant sought to be set off against the plaintiff's claim. It was held that the counterclaim of the defendant arose directly out of the transaction, and was connected with the subject of the plaintiff's action, and that the plaintiff could not object that the counterclaim was in the nature of a tort and therefore could not be pleaded as against a claim on a contract, since under the terms of the contract alleged by the defendant the plaintiff itself was liable for the loss: See, also, *Deford* v. *Hutchinson,* 45 Kan. 318 (25 Pac. 641, 11 L. R. A. 257). To much the same effect see *Johnson* v. *St. Louis Butcher Supply Co.,* 60 Ark. 387 (30 S. W. 429); *Lapham* v. *Osborne,* 20 Nev. 168 (18 Pac. 881); *Thompson* v. *Kessel,* 30 N. Y. 383; *Cooper* v. *Kipp,* 52 App. Div. 250 (65 N. Y. Supp. 379); *Ramsey* v. *Capshaw,* 71 Ark. 408 (75 S. W. 479); *Brown* v. *Buckingham,* 11 Abb. Pr. 387, 21 How. Pr. 190; *Wilson* v. *Hughes,* 94 N. C. 182.

The instant case depends upon the force and effect of subdivision (1) of Section 74, Or. L. It should be remembered that all forms of action are abolished. The main question is, did the cause of action set forth in defendant's answer as a counterclaim arise out of the transaction set forth in the com-

plaint as the foundation of plaintiffs' claim? If so, it may be pleaded as a counterclaim. If not, the contrary should be held.

Section 73, Or. L., permits an answer to contain a statement of any new matter constituting a defense or counterclaim. Section 74, Or. L., provides that the counterclaim must be one existing in favor of the defendant, and against the plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes of action:

"(1) A cause of action arising out of the contract or transaction set forth in the complaint, as the foundation of the plaintiff's claim.

"(2) In an action arising on contract, any other cause of action arising also on contract, and existing at the commencement of the action.

"The defendant may set forth by answer as many counterclaims as he may have, including pleas in abatement. Such defenses shall each be separately stated and shall refer to the causes of action which they are intended to answer, in such manner that they may be intelligently distinguished; provided, that the defendant shall not be required to admit in his answer any liability or indebtedness to the plaintiff in order to be permitted to plead a counterclaim."

Subdivision (1) above quoted provides for two classes of counterclaims; first, a demand existing in favor of the defendant and against the plaintiffs, which arises out of the contract upon which the plaintiffs base their action; second, a cause of action arising out of the transaction set forth in the complaint as the foundation of plaintiffs' claim.

The word "transaction" has a broader significance than the word "contract," as the words are used in our Code. Every contract may be said to be a transaction, but every transaction is not necessarily a contract. The term "transaction" as dis-

tinguished from the contract is intended to extend to other matters than a contract upon which an action may be based. In actions in which some transaction, although not necessarily a contract, is set forth as the foundation of the plaintiffs' claim, counterclaims which arise out of the same transaction, may be pleaded. "The term 'transaction' is all-embracing." Bliss on Code Pleading, § 372, and note to § 371.

To that section of the work on Code Pleading which discusses the second class of counterclaims, the following note is appended:

"I can imagine cases where one neglects a common-law duty, as that of a carrier, where the parties have been brought into obligatory relations by means of a contract, in which the mutual liabilities would be enforced, whether the original action were founded upon the contract and its breach, or upon the common-law duty and its tortious disregard. The transaction would be the same."

In *Bitting* v. *Thaxton*, 72 N. C. 541 (see note to § 374, Bliss on Code Pleading), objection had been made because the action was one of tort.

Mr. Justice READ, after showing that there was but one form of action, says:

"When the plaintiff files his complaint, setting forth the transaction, whether it be a tort or a contract, the defendant may set up any claim—which he has against the plaintiff, connected with the transaction set up in the complaint, and this is called 'a counterclaim.' And where the plaintiff states the transaction, he cannot, by calling it one name or another—as, tort, or contract—cut off the defendant's counterclaim growing out of the same transaction. It is the 'transaction' that is to be investigated, without regard to its form or name."

See *Judah* v. *Trustees of Vincennes University,* 16 Ind. 56; *Cow Run Tank Co.* v. *Lehmer,* 41 Ohio St. 384; *Cornelius* v. *Kessel,* 58 Wis. 237 (16 N. W. 550); *Revere Fire Ins. Co.* v. *Chamberlin,* 56 Iowa, 508 (8 N. W. 338, and 9 N. W. 386); *Mulberger* v. *Koenig,* 62 Wis. 558 (22 N. W. 745).

A statement particularly applicable to this case is found in Cobbey on Replevin, Second Edition, Section 793; the only difference being between chattel mortgage and a conditional sale contract. We there read as follows:

"In replevin by a mortgagee, the mortgagor may prove a purchase of the goods by the mortgagee subsequent to the making of the mortgage and his refusal to take the goods and pay for them as agreed; and if plaintiff, mortgagee, is allowed to keep the goods, may have judgment for a return or the value of her interest therein."

*Xenia Branch Bank* v. *Lee,* 7 Abb. Pr. (N. Y.) 372, was an action brought to recover damages for an alleged conversion of certain bills of exchange. The answer first denied the allegations of the complaint and averred that several bills were indorsed to defendant and received by him in good faith; second, the answer set up, by way of counterclaim, the making of several drafts with plaintiff as drawee, which were duly indorsed, and finally in due course came to the proper possession of defendant, and alleged that there was due upon said bills a certain sum. The plaintiff moved to strike from the answer this counterclaim, on the ground that it was not one which the Code authorized to be set up in such an action. After an extended discussion it was held that the counterclaim was permissible, for the reason that it arose out of the transaction set forth in the complaint as the

foundation of the plaintiffs' claim. See note to § 371, Bliss on Code Pleading.

In the note referred to in Ann. Cas 1913A, at page 108, the author states:

"The rule permitting the assertion of a counter-claim 'arising out of the contract or transaction set forth in the complaint' or 'connected with the subject of the action' finds frequent application in cases where chattels have been the subject of a conditional sale or installment lease, and the vendor seeks the recovery of the possession of the goods sold on the failure of the vendee to make the payments agreed on. In such a case it is well settled that the vendee may counterclaim for damages arising from the vendor's failure completely to perform the contract of sale or from his breach of warranties or conditions annexed thereto." (Citing several authorities.)

In note to *Dearing Water Tube Boiler Co.* v. *Thompson,* 24 L. R. A. (N. S.) 748, it is stated:

"Where a statute in general terms and without limitation as to the nature of the action, authorizes a defendant to counterclaim for damages arising out of the transaction set forth in the complaint as the foundation of plaintiff's claim or connected with the subject of the action, defendant in replevin may counterclaim for damages which, at common law, would have been a proper item for recoupment."

The transaction involved in the case at bar includes the sale and warranty of the automobile the representations made to defendant by plaintiffs to induce him to make the purchase. The transaction set forth in the complaint as the foundation of plaintiffs' claim may fairly be said to embrace all the dealings between plaintiffs and defendant relating to the conditional sale and transfer of the machine. In a just sense the counterclaim of defendant arose out of such transaction or dealings. Plaintiffs, in order to support their alleged title

to the motor-car, offered in evidence the note or conditional sale contract. The defendant then was entitled, as a defense to plaintiffs' demand, to allege and prove that there was nothing due on the contract, either that the debt had been paid or extinguished. If there was no debt due from defendant to plaintiffs on the sale of the automobile, then there was no title to, or right of possession, of the car in plaintiffs, and their action should fail.

Whether the cause of action set forth in defendant's answer as a counterclaim arises out of the contract set forth in the complaint, it is unnecessary to stop to consider, as the term "transaction" being a broader term, and the greater includes the less.

The foundation or basis of plaintiffs' claim at first blush might seem to be the right to the possession of the car; but the real foundation of plaintiff's claim is the debt alleged to be due from defendant, and the title to the motor-car which the plaintiffs retain as security for the payment of the debt. This is asserted by the plaintiffs as the foundation of their interest and right to recover the property in suit. The answer and reply develop all the main facts of the dealings between the parties, and together with the complaint raise the issues which may properly be tried in one case, and thereby carry out the letter and spirit of the Code: See note to *Zimmerman etc. Co.* v. *Sunset Lbr. Co.,* Ann. Cas. 1913A, 107, 108, and note to *Vallancey* v. *Hunt,* 34 L. R. A. (N. S.) 473. As noticed above, many of the Codes contain the words "or connected with the subject of the action" in addition to subdivision (1) of Section 74, Or. L., making three classes embraced in subdivision (1). This does not lessen or narrow the meaning of the provision

providing for the two classes of counterclaim found in subdivision (1), Section 74 of our Code.

In the present action the right to recover possession of the automobile arises out of the contract by which the plaintiffs, the vendors, retained the title until full payment of the purchase price. Any matter tending to defeat plaintiffs' right of possession may be pleaded as a counterclaim. Plaintiffs' right is asserted for the purpose of enforcing payment of the note given by defendant and is in the nature of a foreclosure. As stated, if there is no debt against the defendant, there is no right of possession in the plaintiff. The case comes squarely within the rule stated in the Zimmerman case. The counterclaim pleaded by defendant is. one arising out of the contract, or transaction, set forth in the complaint. The surplus, claimed by the defendant in his answer, arose out of the transaction in which the note or contract was given as a part of the same transaction.

The fact that the defendant, in effect, claims that the machine is worthless, at least to him, and does not ask for a return of possession of the chattel, does not change the matter. The damages claimed by defendant exceeded the total claim of plaintiffs, or the value of the automobile or the amount claimed on the note and the matter could very conveniently all be adjusted in one action. The defendant should not be relegated to another action at law to recover any amount to which he might be entitled by virtue of the transaction, and thereby split his cause of action. According to the letter and spirit of the Code the whole matter should be determined in this action. This is not an action where the cause alleged in the complaint had its origin in and is based upon an alleged tortious act of the defendant.

It is contended by defendant that the testimony as to the failure of the car to fulfill the warranty is in violation of the rule that parol evidence is not competent to vary the terms of a written instrument. It may be stated at the outset that the testimony objected to does not contradict the terms of the written instrument in evidence in the case. That document consists of a promissory note, and states that the note is given for the purchase price of a Moore automobile of a certain factory number, type touring, four cylinder, motor 1920. There is no description of the kind of car, or any warranty contained in the instrument. It further provides that the plaintiffs should retain title to the automobile until the purchase price is paid, and contains the usual stipulations in regard to insurance and the care of the property.

Evidence of a collateral oral agreement supplementing a written agreement on the same subject and not varying or contradicting its terms is admissible: Note, Ann. Cas. 1914A, 454; *Barnes-Smith Merc. Co.* v. *Tate,* 156 Mo. App. 236 (137 S. W. 619).

In so far as the written contract of sale fully expresses the terms of the agreement, a parol agreement is excluded thereby. A number of recent cases apply the rule permitting a writing to be supplemented by proof of a collateral parol agreement to a written agreement for the sale of chattels: Note, Ann. Cas. 1914A, 456; *In re Clairfield Lbr. Co.,* 194 Fed. 181; Jones on Construction of Contracts, §§ 139, 140.

The defendant stresses his objection to the oral evidence upon the clause contained in the note, or the contract, above quoted in regard to there being no other representations or agreements other than are set forth therein. Practically this precise question

was passed upon in the case of *Little* v. *Van Syckle,* 115 Mich. 480 (73 N. W. 554). That case was in regard to a sale of a piano under a conditional sales contract. The title remained in the seller. The contract concluded much like the one in question "that there is no agreement or understanding between the salesman and myself otherwise than herein mentioned." The court said, on page 483 of the report:

"If a vendor in such cases desires to avoid that warranty which the law implies, he must incorporate it in his contract, or insert therein a warranty which will exclude all others. Where a parol express warranty has been agreed upon outside the written contract, and that warranty is such as the law implies without any agreement, the vendee cannot be deprived of the benefit of this warranty by a provision in the contract that 'there is no agreement or understanding between the salesman and myself otherwise than herein mentioned.' Such a clause is not in conflict with the implied warranty which the law attaches to all such contracts."

In an action of claim and delivery like the present case, under our statute the defendant may set off any demand he has against the plaintiff that grows out of the same subject as plaintiff's claim: *Freeman* v. *Trummer,* 50 Or. 287 (91 Pac. 1077); *Reardon* v. *Higgins,* 39 Ind. App. 363 (79 N. E. 208); *Brown* v. *Buckingham,* 11 Abb. Pr. (N. Y.) 387; *Smith* v. *French,* 141 N. C. 1 (53 S. E. 435); *Aultman* v. *McDonough,* 110 Wis. 263 (85 N. W. 980, 24 L. R. A. (N. S.) 748, note).

In the present case, the defendant alleged, in effect, that the plaintiffs warranted the Moore car to be as good as the car used in the demonstration; was mechanically perfect and in first-class condition and serviceable. The testimony, on the part of defendant, tended to show that the car was not in good mechanical condition; that the clutch slipped and the car vomited

oil "way back on the back fender"; that the engine was weak; that the plaintiff promised to remedy the defects and the defendant applied to them several times to do so, but they tried and failed to comply with their agreement in that respect and after a time refused. The testimony on the part of plaintiffs conflicts somewhat with the defendant's testimony, but with this we have nothing to do.

Plaintiffs were dealers in automobiles and sold the car to defendant under the usual conditions. Section 8178, subdivision 1, Or. L., commonly known as the Uniform Sales Act, states:

"Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.

" (6) An express warranty or condition does not negative a warranty or condition implied under this act unless inconsistent therewith."

A material change has been made by the provision of Section 8178, Or. L., which puts the seller, who is not the manufacturer or grower, in the same position which was formerly held by the grower or manufacturer with reference to an implied warranty.

There can be no question that the car involved was sold to the defendant for the usual purpose of driving and riding in it, which the plaintiffs well knew. The plaintiffs and defendant, when making the deal, were not upon an equal footing. The plaintiffs were experienced dealers and understood, or are presumed to have understood, the mechanism of a motor better than defendant. Evidently the defendant relied upon their judgment and skill. The express oral warranty pleaded in this action was practically the same as a

warranty implied by law, that it would be reasonably serviceable for defendant's use: See *Pendergrass* v. *Fairchild,* 106 Or. 537, 546 (212 Pac. 963); *Durbin* v. *Denham,* 106 Or. 34, 38 (210 Pac. 165, 29 A. L. R. 1227); *Bouchet* v. *Or. Motor Car Co.,* 78 Or. 230 (152 Pac. 888); *Luria Bros. Co.* v. *Klaff,* 139 Md. 586, 593 (115 Atl. 849); 1 Uniform Laws, Ann., 68 and 73; *Gold Ridge Min. Co.* v. *Tallmadge,* 44 Or. 34 (74 Pac. 325, 102 Am. St. Rep. 602); *Puritan Mfg. Co.* v. *Westermire,* 47 Or. 557 (84 Pac. 797).

It is the general rule that, in order for a writing to be protected by the parol evidence rule, it must be the final repository of the agreement. There must be an integration of the entire agreement into the writing; a writing drawn up for some other purpose than a final and complete repository of the agreement is not the subject of the parol evidence rule: Wigmore on Ev., §§ 2429, 2430; *Cook* v. *Darling,* 160 Mich. 475 (125 N. W. 411); Jones on the Construction of Contracts, § 134.

The ruling of the court restricted the oral evidence in relation to the deal between plaintiffs and defendant to the agreement and statements made after the execution of the written contract. The ruling was favorable to the plaintiffs.

There is no reversible error in the record. The judgment of the trial court should be affirmed.

McBride, C. J., concurs in this opinion.